STATE EX REL. FROST, RESPONDENT, *v.* BARNETT, COUNTY
TREASURER, APPELLANT.

(No. 3,423.)

(Submitted May 8, 1914.   Decided May 29, 1914.)

[141 Pac. 287.]

*Intoxicating Liquors—Wholesale and Retail Licenses—Statutory Construction — County Commissioners — Discretion — Nonappealable Orders.*

Appeal and Error—Nonappealable Orders.
  1.  An order overruling a motion to quash an alternative writ of mandate is not an appealable one.
  [As to what judgments and orders may be appealed from, see note in 20 Am. St. Rep. 173.]

Intoxicating Liquors—Wholesale and Retail Licenses—Distinction Abolished.
  2.  Since the enactment of House Bill 80 (Laws 1901, p. 143), the distinction between wholesale and retail liquor licenses has been abolished, and there is now but one license to engage in the liquor business; hence the district court erred in awarding a peremptory writ of mandate commanding a county treasurer to issue to relator a license permitting him to sell liquor at wholesale.

Same—Licenses—County Commissioners—Discretion.
  3.  Under section 2759, Revised Codes, providing that a person who sells liquor must obtain a license "as prescribed in this Chapter," one

who seeks a license to carry on the liquor business at a place outside the corporate limits of a city or town must, under section 2760 as amended, apply to the county commissioners, in whose discretion it lies whether to grant it or not.

[As to the power of municipal corporations to regulate the business of dealing in intoxicating liquors, see note in 114 Am. St. Rep. 298.]

*Appeal from District Court, Dawson County; C. C. Hurley, Judge.*

*Mandamus* by the state, on the relation of James Frost, against L. R. Barnett, treasurer of Dawson county. From an adverse judgment and an order overruling his motion to quash the alternative writ, defendant appeals. Appeal from order dismissed, judgment reversed, and cause remanded, with directions to dismiss the proceedings.

*Mr. H. J. Haskell,* for Appellant, and *Mr. Henry C. Smith,* and *Mr. William T. Piggott* submitted a brief; *Mr. Smith* and *Mr. Piggott* argued the cause orally.

*Messrs. Anderson & Foss,* for Respondent, submitted a brief; *Mr. Anderson* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On August 29, 1913, James Frost made application to the county treasurer of Dawson county for a license to sell spirituous, malt, vinous, distilled and fermented liquors in quantities not less than a quart, and not to be drunk upon the premises where the business was to be conducted. With the application there was tendered the required fee for a license to do business in a place having less than 300 inhabitants, and also the fee of one dollar for issuing the license. The treasurer refused the application, and a proceeding in *mandamus* was instituted. In his affidavit for the writ the relator set forth that he is a citizen of the United States; that the place where he proposed to conduct his business has less than 300 inhabitants, and is not in an incorporated city or town. An alternative writ was issued, and upon the return a motion to

quash was interposed. The motion was overruled, and the treasurer, refusing to plead further, suffered a judgment awarding the peremptory writ to be entered against him, and appealed.. There is also an attempt to appeal from the order [1] overruling the motion to quash, but, as that is not one of the orders enumerated in section 7098, Revised Codes, it is not appealable.

The appeal from the judgment presents an interesting question. In order to entitle him to the writ of mandate, it was [2] necessary for relator, Frost, to show that, upon tendering to the county treasurer the proper fee, he was entitled to the license demanded, as a matter of right; and whether he makes that showing is the question for our determination.

In the Political Code of 1895 the subject "Licenses" is treated in Chapter XIII, Part III, Title X. Section 4063 provided: "Every person who sells spirituous, malt, or fermented liquors or wine, in less quantities than one quart, must obtain license from the county treasurer, as prescribed in this Chapter, and make therefor the following payment." Then follow certain schedules regulating the amount of the license fee according to the population of the place where the business was to be carried on. Section 4064 provided that every person who at a fixed place of business sells goods, wares or merchandise, wines or distilled liquors must obtain from the county treasurer a license. The amount of the license fee was regulated according to the estimated monthly sales. Section 4065 provided: "The sale of liquors and wines by persons licensed under the preceding section must not be in less quantity than one quart."

Leaving out of consideration licenses authorized to be issued to brewers, distillers, manufacturers, rectifiers and malsters, as not involved in any manner in this controversy, and we had liquor licenses classified by the Codes of 1895 into two classes, which, for want of more appropriate names, will be designated retail licenses and wholesale licenses. Section 4063 above, dealt with the retail licenses, and sections 4064 and 4065 with the wholesale licenses. In our consideration of this subject

it is to be borne in mind constantly that in the sections of the Code just referred to, and in all the legislation hereafter considered the subject under consideration was licenses, not the liquor business.

In 1897 sections 4063, 4064, and 4065 were amended (*State v. Courtney,* 27 Mont. 378, 71 Pac. 308), but the classification of licenses as retail licenses and wholesale licenses was retained (Laws 1897, p. 198). In 1901 the legislative assembly passed House Bill 80, which so far amended the law relating to liquor licenses as to destroy the classification altogether. That Act provided for only one form of liquor license, in the following terms: "Every person, who sells or offers for sale, directly or indirectly, any spirituous, malt, vinous, distilled or fermented liquors or wines, must obtain a license therefor from the county treasurer." And this provision was followed by a schedule of the rates based upon the population of the place where the business was to be conducted. (Laws 1901, p. 143.) Under House Bill 80, a person rightfully in possession of a liquor license could engage in the liquor business and sell at wholesale or at retail, as he chose. There was but one form of license, and that simply authorized the holder to engage in the liquor business. In 1905 House Bill 80 was amended, but only in respect to the schedule of fees. (Laws 1905, p. 174.) At the same session of the legislature Chapter 71 was enacted entitled: "An Act to regulate the issuance of licenses of retail liquor dealers in cities, towns, villages or camps containing a population of less than one hundred." This Act did not assume to change the form of the liquor license or to affect the license in any manner whatever. By section 1 it regulated the method by which the only form of liquor license known to the law could be procured by one who sought to engage in the liquor business in a city, town, village or camp having less than 100 inhabitants. The fact that the Act refers only to retail liquor dealers is of no significance here. There was but one form of liquor license authorized by law, and anyone who procured a license under the Act could have sold either at retail or at wholesale. The purpose of the Act was not to define "retail liquor dealers,"

but to require from the applicant for license who sought to
engage in the business in an isolated place or a small community
a petition signed by at least twenty freeholders residing in the
immediate community where the business was to be carried on.
It further took from the county treasurer the sole authority to
grant the license; it lodged the power to order the license in the
board of county commissioners, and, by section 2, clothed the
members with a certain degree of discretion. (Laws 1905,
p. 154.)   In the codification of 1907, House Bill 80, with the
slight amendments made in 1905, above, was carried forward
as section 2759 of Chapter XIII, which Chapter is entitled
"Licenses"; while section 1, Chapter 71, of the Laws of 1905
was carried forward as section 2760, and section 2 as section
2761 of the same Chapter.   In 1909 the legislature passed Chap-
ter 1, entitled: "An Act to approve, legalize and adopt the
division and arrangement of the Revised Codes of Montana of
1907."   Section 1 of that Chapter reads as follows: "The divi-
sion and arrangement into codes, parts, titles, chapters, articles
and sections of the Revised Codes of Montana of the year 1907,
as reported by the code commissioner, appointed under the
authority of Chapter 85 of the Laws of the Tenth Legislative
Assembly of the state of Montana, are hereby approved, con-
firmed, legalized and made effectual and valid, and it shall be
sufficient reference to any law in said Codes, in citing or amend-
ing the same, to give the number of the section and to add
thereto the words 'Revised Codes of 1907.' "   Chapter 92 of
the Laws of 1911 is entitled: "An Act limiting the number of
licenses which may be issued for the sale of intoxicating liquors,
and regulating the issuance of such licenses, and providing for
a revocation of license upon conviction of a penal offense."
Section 3 of the Act provides that every person who desires to
engage in the business of retail liquor dealer in any place not
within the corporate limits of any city or town must obtain a
license from the county treasurer.   It requires the applicant to
present to the board of county commissioners a petition signed
by at least twenty freeholders requesting the issuance of such

license. It requires the board of commissioners to give notice and provides for a hearing of any protest. This Act was, in effect, an amendment to section 2760 of the Revised Codes, though not designated such by name. By Chapter 35 of the Laws of 1913, some amendments were made to Chapter 92 of the Laws of 1911, but they do not reflect upon the question now before us.

In every enactment since House Bill 80 was adopted, by which the classification of liquor licenses was abolished, the references to retail liquor dealers are but the loose expressions of legislators, and are not significant in the consideration of the particular question before us. There has never been since 1901 any attempt to re-establish two or more classes of liquor licenses. Every Act has had to do with the fees for the license or the method of procuring it, and not with the license itself. Anyone rightfully in possession of a liquor license since 1901 could sell at retail or at wholesale, and, if this relator is entitled to any license at all, he is entitled to the only form of license which is authorized by law, *viz.,* one which will authorize him to engage in the liquor business and under which he can sell at wholesale or at retail, as he chooses. The county treasurer cannot, by writing into the license something which the law does not authorize, limit the relator's right to sell at wholesale only; and neither does respondent's application for the license form any part of it or limit him in the manner in which he may dispose of his stock of liquors, if he secures a license authorizing him to engage in the liquor business.

The relator is not entitled, as a matter of right, to a license to carry on the liquor business outside of the corporate limits of any city or town. Section 2759 provides that every person who sells liquor must obtain a license "as prescribed in this Chap-[3] ter," and, because this relator seeks to carry on his business at a place outside the corporate limits of a city or town, section 2760, as amended by the Acts of 1911 and 1913, requires him to apply to the county commissioners, and even then the matter of granting or refusing the license is one which is ad-

dressed to the discretion of the board. The phrase "as prescribed in this Chapter" is not meaningless. When the legislature adopted Chapter 1 of the Laws of 1909, above, they adopted the arrangement of the Codes, as well as the substance of them. In effect, the legislature said: "The phrase 'as prescribed in this Chapter,' when used in section 2759 shall hereafter refer to the mode of procedure outlined in section 2760 as amended."

The relator did not pursue the method prescribed by that section, and therefore was not entitled to a license. He was not entitled to the particular relief demanded, because his request was for a wholesale liquor license, and there is not any such thing known to the law of this state.

The pretended appeal from the order overruling the motion to quash is dismissed. The judgment is reversed and the cause remanded, with directions to dismiss the proceeding.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.